UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-CV-01-KKC

PHILLIP DARRELL SPARKMAN and
RALPH DYER                                                                                          PLAINTIFFS

v.                                      **OPINION AND ORDER**

RANDY THOMPSON, INDIVIDUALLY AND
IN HIS CAPACITY AS JUDGE EXECUTIVE
OF KNOTT COUNTY, KENTUCKY                                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on cross motions for summary judgment filed by Defendant Randy Thompson ("Thompson") and Plaintiffs Phillip Darrell Sparkman ("Sparkman") and Ralph Dyer ("Dyer"). Rec. 49, 52. Both motions have been fully briefed and are ripe for review. For the reasons set forth below, the Court will deny the motions for summary judgment.

**I.     FACTUAL BACKGROUND**

Sparkman's employment with the Knott County ("the county") began in 2002 as a safety analyst. Rec. 51, Exh. 3, Copy of Advice of Personnel Action. In early 2006, Sparkman became youth activity director at the Caney Creek Community Center. Rec. 48, Depo. of Sparkman at 22-23, 36-37. Dyer was employed by the county for approximately seventeen years, working primarily as a truck driver in the road department. Rec. 48, Depo. of Dyer at 136-38.

The events giving rise to this lawsuit began in the months leading up to the November 2006 election for Knott County Judge Executive ("the election"). Both Plaintiffs were active supporters of Mike Hall ("Hall"), Thompson's opponent in the election and showed their support

for Hall's campaign by placing stickers on their vehicles and engaging in other efforts to aide his election efforts. Rec. 48, Depo. of Sparkman at 88; Rec. 48, Depo. of Dyer at 182. Both Plaintiffs' claim that after Hall lost the election, their political support for his candidacy led to adverse consequences to their employment with the county.

On December 20, 2006, Sparkman received a letter signed by Thompson as judge-executive, informing him that "[e]ffective December 31, 2006, your services as the Knott County Youth Activity Director will no longer be needed." Rec. 51, Exh. 6, Letter. Unlike Sparkman, Dyer was not terminated in 2006. However, on November 14, 2006, he received a letter from Thompson, stating that:

> [i]t has been brought to my attention by your supervisor, that you failed to report to work on various days from November 1-6 without providing an authentic doctor's excuse or without prior approval of taking vacation time. Therefore, consider this a warning that will be placed in your personal file. Please be advised, three warnings of inappropriate behavior or insubordination can result in termination of employment.

Rec. 51, Exh. 4, Letter. This letter was signed by Thompson as Judge Executive. Dyer received a second letter from Thompson on December 20, 2006 informing him that various road department employees:

> brought to my attention...that...[Dyer] had called and/or personally asked them and other employees to not show up for work prior to the Nov. 7th election. This type of activity by county employees cannot be tolerated. I sought the legal advice of an attorney...who advised that activity could qualify as organizing an illegal strike that could be grounds for dismissal. I have decided not to take that action, but to place a record of the improper activity in Mr. Dyer's personnel file. Mr. Dyer's supervisor, Phillip Champion informed him of the reports and the action taken December 19, 2006.

Rec. 51, Exh. 5, Letter.

Dyer was laid off on March 9, 2007. Rec. 49, Exh. 4, Letter. A letter from Thompson informed Dyer that:

2

> [i]t has been brought to may attention recently that you may have some medical conditions that may prevent you from performing your job without causing you physical harm. I was told that on Monday January 29, 2007 you refused the request of your Supervisor, Ronnie Adams, to help shovel gravel and salt to be placed on roadways. Phillip Champion also informed me you refused to help place stones in gabion baskets on a job site last fall. After further review of your personnel file, I see you have a medical release stating that you are not fit to lift in excess of 5 pounds[1] or do extensive bending...at this time there is not a job with the Knott County Road Department that doesn't require some lifting in excess of five pounds and extensive bending....[E]ffective immediately,..., I am going to lay you off until your physician releases you to do the job without this restrictions or until another job becomes available within the department that won't threaten your health.

*Id.* On August 24, 2007, Dyer obtained a release from his doctor to return to work with no restrictions. Rec. 49, Exh. 6. He subsequently resumed working for the county as an animal catcher in October 2007. Rec. 48, Depo. of Dyer at 138. However, Dyer was laid off on a second time in November 16, 2007 because of apparent budget shortcuts. Rec. 51, Exh. 15, Letter.

Plaintiffs Sparkman and Dyer filed suit against Thompson individually and in his capacity as Judge Executive on December 30, 2007. Plaintiffs alleged that Thompson terminated and/or laid them off because of their support for Hall's campaign in violation of their First Amendment Rights under 42 U.S.C. § 1983. In response, Thompson filed a motion for summary judgment claiming that Plaintiffs' political affiliation had nothing to do with the employment decisions that were made. Plaintiffs have responded to Thompson's motion by arguing that they have presented sufficient evidence to establish a prima facie case that the adverse employment consequences that they suffered were politically motivated. Furthermore, they contend that the evidence in support

---

[1] According to the record, it appears that Dyer was actually capable of lifting up to fifteen pounds but was limited to lifting no more than five pounds frequently along with being prohibited from excessive bending and twisting. (Rec. 51, Exh. 15, Work Release dated 8/18/06).

of their claims strong enough to warrant entry of partial summary judgment in their favor.

## II. STANDARD OF REVIEW ON SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure ("FRCP") 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Initially, the burden is on the moving party to inform the district court of the basis for its motion and identify those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," which demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden may be met by the moving party by demonstrating the absence of evidence supporting any one or more of the essential elements of the non-moving party's claim.  *Id.* at 322-25.  Once this initial burden has been met, the non-moving party must present specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).

A party opposing a motion for summary judgment cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A scintilla of evidence in support of the plaintiff's position is not enough because there must be enough evidence to allow a jury to reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  This requires presentation of some evidentiary material beyond the pleadings in support of the plaintiff's position.  *Celotex*, 477 U.S. at 324.  Consequently, summary judgment must be entered against a party who fails to make an adequate showing to establish the existence of an essential element to that party's case, for

which it bears the burden of proof at trial. *Id.* at 322.

However, when considering a motion for summary judgment, the court must view the facts contained in the record and draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The court should not weigh the evidence or determine the truth of any disputed matter because the only determination for the court is whether sufficient evidence exists from which a jury could reasonably find for the non-moving party. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). What the court must ultimately determine is whether there is a sufficient dispute about the evidence to require submission to the jury, or whether the evidence favors one side so strongly that it is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 251-52.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

To establish a cognizable political retaliation claim under the First Amendment, Plaintiffs must demonstrate that: (1) they were engaged in a constitutionally protected activity; (2) they were subjected to an adverse employment action or deprived of some employment benefit; and (3) their protected conduct was a substantial or motivating factor for the adverse employment decision. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). Even if Plaintiffs meet this initial burden, Thompson is still entitled to summary judgment if he can show by a preponderance of the evidence that there were legitimate non-discriminatory reasons for the adverse employment actions taken in this case and that the same actions would have been taken even if Plaintiffs had not supported Hall's campaign. *See Jackson v. Leighton*, 168 F.3d 903,

909 (6th Cir. 1999); *Boger v. Wayne County*, 950 F.2d 316, 322 (6th Cir. 1991). However, this is an issue of fact that normally should not be decided on summary judgment unless the evidence is so one-sided that one party must prevail as a matter of law. *Boger*, 950 F.2d at 322-23.

**A. Constitutionally Protected Conduct**

The first element of Sparkman and Dyer's prima facie case requires a showing that they were engaged in constitutionally protected conduct. Both Plaintiffs assert that Thompson retaliated against them because of their support for Hall's candidacy. The record clearly indicates that Plaintiffs supported Hall's campaign by placing bumper stickers on their vehicles, placed signs in their yards and engaged in other activities intended to influence potential voters to support Hall.

The right of political association is a well established right under the First Amendment because "political belief and association constitute the core of those activities protected by the First Amendment." *Sowards v. Loudon County*, 203 F.3d 426, 434 (6th Cir. 2000)(quoting *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69, 111 L. Ed. 2d 52, 110 S. Ct. 2729 (1990)). Clearly, support of political candidates falls within the scope of the right of political association. *Id.* In reviewing all of the evidence presented and the parties' respective arguments, the Court finds that Plaintiffs have made a prima facie showing that they engaged in constitutionally protected activity.

**B. Adverse Employment Action**

The second element of Plaintiffs' prima facie case requires them to show that they were subjected to adverse employment actions by Thompson. In general, a plaintiff succeeds in making such a showing where the adverse employment action suffered would chill a person of

6

ordinary firmness from continuing to engage in the constitutionally protected activity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); *Sowards*, 203 F.3d at 433.

Sparkman was terminated in December of 2006 and Dyer was laid off once in March 2007 and a second time in November 2007. The Sixth Circuit has recognized that adverse employment actions include discharges, demotions, refusal to hire, non-renewal of contracts and failure to promote. *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)(en banc). In light of the Sixth Circuit's recognition that demotions and failure to promote are adverse employment actions, the Court finds that the layoffs and/or terminations in this case clearly qualify as adverse employment actions.

**C. Causal Connection**

Finally, Plaintiffs must show that their constitutionally protected support of Hall's candidacy was a substantial or motivating factor behind the adverse employment actions that they suffered. In opposing Defendant Thompson's motion for summary judgment, Plaintiffs "may not rely on the mere fact that an adverse employment action followed speech that...[Thompson] would have liked to prevent," but must link the constitutionally protected activities to the employment decisions. *Painter v. Campbell County Bd. of Educ.*, 417 F. Supp. 2d 854, 863 (E.D. Ky. 2006)(citing *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997). Sparkman and Dyer must point to specific non-conclusory allegations reasonably linking their support of Hall's candidacy to Thompson's decision to lay them off and/or terminate them. *Bailey*, 106 F.3d at 144. While Plaintiffs can make this showing by using direct or circumstantial evidence, they must present sufficient evidence to allow a reasonable juror to find in their favor.

*Conklin*, 834 F.2d at 546-47.

**1. Causal connection Sparkman**

Sparkman began working for Knott County in 2002 as a safety analyst. The record indicates that Sparkman and Thompson did not get along well while Sparkman worked as a safety analyst. During his deposition, Thompson acknowledged that he selected Sparkman for the youth activity director position in 2006 in part because "Darrell told me he didn't like being around Harold Mullins...and I thought that might be something he could do." Despite tensions between Mullins and Sparkman, Sparkman's employment record does not contain any negative entries prior to his termination at the end of 2006.

Sparkman alleges that his employment environment began changing for the worse leading up to the 2006 election. He claims that Thompson and other members of his administration made various statements to him indicating their displeasure with his support for Hall and indicating that his employment might be adversely impacted as a result. Sparkman claims that Thompson let him know that he did not appreciate Sparkman's vehicle having Mike Hall stickers on it while it was in the county's parking lot. Similarly, Sparkman claims that Harold Mullins instructed him to "get those f'ing stickers off," asked what it would take for Sparkman to come to Thompson's side. Mullins also allegedly told Sparkman that he could not help him if he continued supporting Hall. Finally, Sparkman claims that after he informed Thompson that he would be supporting Hall, Thompson allegedly said "I'll remember this conversation" under his breath.

The letter Thompson sent Sparkman notifying him that he was being terminated effective December 31, 2006 gave no reasons for the decision. While Thompson invoked his 5th

Amendment privilege during much of his deposition, he submitted an affidavit stating that politics did not affect the decision to terminate Sparkman. Furthermore, Mullins has claimed that he was the individual who recommended Sparkman's termination. However, during his deposition, Thompson stated that as youth activity director, Sparkman did not have a supervisor above him, that he thought of himself as Sparkman's supervisor and that Sparkman answered to him. As a result, it is unclear what basis Mullins would have had for recommending Sparkman's termination once he was transferred from safety analyst to youth activity director. Further, Sparkman alleges that when Mullins gave him his termination slip, he said that this is "[s]omething I've got to do and I hate to do it, but the Judge told me to do this and...give you this termination slip...if there's anything I can do for you, I'll try to help you."

Additional evidence, viewed in the light most favorable to Sparkman also supports the claim that his termination was substantially related to his political support for Hall. Sparkman was terminated less than two months after the November 7, 2006 election. Sparkman claims that this close temporal proximity is circumstantial evidence of a causal connection. In addition, Jamie Hughes who became youth activity director after Sparkman was terminated gave deposition testimony that the only complaint he had heard about Sparkman's job performance was that "Darrell was campaigning, I guess, for another candidate when he was in position." Sparkman also relies on deposition testimony from Stewart Smith,[2] indicating that after Sparkman was terminated, Thompson told him that "the reason that Darrell didn't have his job in

---

[2] The transcript of this deposition is not in the record. However, the Court has considered the statement allegedly made to Stewart Smith for purposes of this summary judgment motion because Defendant has not disputed that the statement was in fact made, but has argued that the statement does not indicate that Sparkman was terminated for his protected activities.

9

the first place was because he didn't know how to keep his mouth shut."

In reviewing all of the evidence in the record, the Court finds that Sparkman has presented sufficient evidence for a reasonable juror to conclude that Thompson's decision to terminate his employment was substantially connected to Sparkman's political support of Hall. As a result, the burden shifts to Thompson to show by a preponderance of the evidence that he would have made the same employment decision even if Sparkman had not actively supported Hall's candidacy. *See Jackson v. Leighton*, 168 F.3d at 909; *Boger v. Wayne County*, 950 F.2d at 322.

Thompson has asserted that the decision to terminate Sparkman had nothing to do with politics. First, Thompson submits that the decision was based in part on tensions between Sparkman and Mullins, caused by Sparkman not doing much work, trying to undermine his authority, and taking advantage of his employment situation. However, Thompson testified that he moved Sparkman to the youth activity director position because Sparkman did not like being around Mullins. Furthermore, Mullins statements about Sparkman undermining him, not doing much work, and taking advantage of his employment situation appear to concern his work as a safety analyst and not his work as youth activity director.

Thompson also alleges that Mullins recommended that Sparkman's position as youth activity director be eliminated. However, based on employment records submitted for Jamie Hughes who became youth activity director after Sparkman was terminated, it is unclear whether Sparkman's position was actually eliminated or whether he was simply replaced by a new employee who did not support Hall's campaign. The Court finds that a genuine factual dispute remains whether Sparkman's termination was substantially motivated by his political support for

Hall, or whether as Thompson claims Sparkman was terminated because he could not get along with Mullins and his position was eliminated. Accordingly, summary judgment cannot be entered in Defendant Thompson's favor.

## 2. Causal connection Dyer

Dyer worked as a truck driver for Knott County for seventeen years before being laid off in March of 2007. Dyer makes several arguments in support of a substantial connection between his protected conduct and the decision to lay him off. First, he points to his positive employment history as evidence that he was let go because of his political support for Hall. The record does not contain any complaints about Dyer's job performance or ability to perform his truck driving job until after the 2006 election. However, Dyer claims that after the election complaints containing false allegations began surfacing.

On November 14, 2006 Dyer received a letter from Thompson alleging that he "failed to report to work on various days from November 1-6 without providing an authentic doctor's excuse or without prior approval of taking vacation time." Dyer acknowledges taking half days in the weeks leading up to the election, but contends that he received approval from his supervisor before taking half days. He also alleges that he followed all of the county's requirements for taking time off including marking off the days on the county's master calendar at least seven days in advance. Dyer argues that because the allegations in the complaint are false, this shows Thompson's intent to retaliate against him.

On December 20, 2006, Dyer received a second letter of reprimand alleging that he called and/or asked other road department employees "to not show up for work prior to the...election." However, Dyer asserts that he never asked any employee to stay home from work in the weeks

11

leading up to the election. In reviewing Dyer's testimony during Thompson's criminal trial, Dyer appears to acknowledge that he told other employees "to take off like I was doing" if they didn't like the work that they were being required to do.

Dyer received his final letter from Thompson on March 9, 2007 claiming that Dyer had "some medical conditions that may prevent...[him] from performing...[his] work without causing" him physical harm. The letter claimed that Dyer had refused to do work when asked on at least two instances. Thompson further stated that he had reviewed Dyer's personnel file containing his medical restrictions. Based on the restrictions, Thompson claimed that, "there is not a job with the Knott County Road Department that doesn't require some lifting in excess of five pounds and extensive bending." As a result, Thompson informed Dyer that he would be laying him off immediately until his physician released him "to do the job without this restrictions or until another job becomes available within the department that won't threaten your health." Dyer disputes that he ever refused to perform any work for the county. He asserts that he merely reminded his supervisor of his medical restrictions. Furthermore, he claims that because lifting was not a significant part of his job as a truck driver, his medical restrictions did limit his ability to perform his job as Thompson claimed. Finally, Dyer asserts that Thompson's letter exaggerated his limitations.

Dyer also relies on the close temporal proximity between the November 2006 election and the decision to lay him off in March 2007 in support of a causal connection. Furthermore, he claims that his case is strengthened by similar allegations of political retaliation made by Sparkman against Thompson. In reviewing all of the evidence presented and viewing this evidence and drawing all reasonable inferences in the light most favorable to Dyer, the Court

finds that he has made a prima facie showing of a substantial connection between his constitutionally protected activities and the decision to lay him off in March 2007. This finding is based on the temporal proximity between the election and the adverse employment decision, the similar allegations of political retaliation raised by Sparkman and Dyer's lengthy and Dyer's apparently unblemished employment record prior to the election. Furthermore, the finding is based on the fact that stated basis for the decision to lay Dyer off - his lifting and bending limitations - were apparently known for several years and did not become an issue until after the election.

As a result, the burden shifts to Thompson to show by a preponderance of the evidence that the same employment decision would have been made absent Dyer's support for Hall. Thompson asserts that the decision was not based on political considerations, but was based on concerns for Dyer's health. Having reviewed the evidence, the Court finds that a question of fact remains whether Dyer was laid off because of his physical limitations or whether the decision to lay him off was made in retaliation for his political support for Hall. Accordingly, summary judgment will not be entered in Thompson's favor.

**IV.   PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs also contend that they are entitled to partial summary judgment on the issue of liability. In making this argument they rely principally on the Sixth Circuit's decision in *Garvey v. Montgomery*, 128 Fed. App'x 453, 2005 WL 758236 (6th Cir. 2005)(unpublished). In *Garvey*, the plaintiffs filed suit against the Franklin County recorder, alleging that they were fired because of their political affiliation in violation of their First Amendment rights. *Id.* at 454. On appeal, from the district court's entry of summary judgment, the Sixth Circuit clarified that after a

plaintiff makes a prima facie showing in a political retaliation case, the burden of persuasion shifts to the defendant to show by a preponderance of the evidence "that the plaintiff would have been discharged notwithstanding his political affiliation." *Id.* at 458. The Sixth Circuit further clarified that unlike Title VII cases, in political retaliation cases the burden should never be placed on the plaintiff to show that a defendant's proffered non-discriminatory justification for an adverse employment action is pretextual.

Based on *Garvey*, Plaintiffs argue that Defendants can only avoid their motion for partial summary judgment if they "adduce evidence that is so overwhelming that a jury would be compelled to find that Thompson would have fired each of the Plaintiffs even if they had not engaged in constitutionally-protected political conduct." However, *Garvey* does not support this argument. *Garvey* did not involve a plaintiff moving for summary judgment, and as a result, the Sixth Circuit had no occasion to discuss a defendant's burden in opposing such a motion. Furthermore, Plaintiffs have not cited any political discharge cases forcing a defendant to make a compelling show to survive a plaintiff's motion for summary judgment on liability.

Accordingly, the Court will apply the ordinary summary judgment standards in considering whether Plaintiffs are entitled to partial summary judgment. Viewing all of the evidence in this case and drawing all reasonable inferences in Thompson's favor, the Court finds that a jury could reasonably find that there was no substantial connection between Plaintiffs' support of Hall's candidacy and the subsequent adverse employment actions by Thompson. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1996). Accordingly, the Court will deny Plaintiffs' motion for partial summary judgment.

14

V. CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED** as follows:

(1) Defendant Thompson's motion for summary judgment (Rec. 49) is **DENIED;** and

(2) Plaintiffs' motion for partial summary judgment (Rec. 52) is **DENIED.**

This 25th day of March, 2010.

Signed By:
*Karen K. Caldwell*
United States District Judge